UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> THOMAS LEGRO, <br><br> Defendant. | Case No. 25-MJ-112 (MAU) |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF
### PRETRIAL DETENTION OF DEFENDANT THOMAS LEGRO

    The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this Memorandum in support of its Motion for Pretrial Detention of Defendant Thomas LeGro under 18 U.S.C. § 3142(f)(1)(A). The defendant has been charged by Criminal Complaint in the United States District Court for the District of Columbia with Possession of Child Pornography, in violation of Title 18 United States Code 2252(a)(4)(B). As discussed further below, law enforcement discovered eleven videos of child sexual abuse material saved on one of the defendant's computers. In addition, the defendant was a registered user of a darknet site dedicated to trafficking in child pornography. Under the factors outlined in 18 U.S.C. § 3142(g), there is no condition or combination of conditions that will reasonably assure the safety of any person and the community if he is released. As a result, detention is appropriate

### Factual Background

### Background to the Tor Network

[text redacted]

A user may access the Tor network via any computer or electronic device that has been configured

to use Tor routing/software, to include computers, smartphones, or tablets. The most common method is to use the Tor web browser, which is preconfigured to access the network. The contents of a Tor user's communications are encrypted while the communication passes through the Tor network. Nevertheless, when a Tor user visits a website and requests content from the website server, the website server can still reliably transmit the requested content to the Tor user's computer. Because of the way the Tor network routes communications through relay computers, traditional online investigative techniques are generally not effective.

Tor may be used to access open-Internet websites like www.justice.gov and to operate or access websites called "hidden services" or "onion services" that are accessible only to Tor users. Like other websites, hidden services are hosted on computer servers that communicate through IP addresses. However, hidden services have unique technical features that attempt to conceal the computer server's location. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

A Tor web address is generally comprised of a series of 56 algorithm-generated characters, i.e., "asdlk8fs9dflku7fasdlk8fs9dflku7fasdlk8fs9dflku7fasdlk8fs," followed by the suffix ".onion." Unlike ordinary websites, there is no publicly available Domain Network Service "DNS" listing through which one can query the IP address of a Tor hidden service. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The Tor network is currently maintained by a private entity called the "Tor Project." The Tor Project maintained a publicly available frequently asked questions (FAQ) page, accessible from its website, which cautioned Tor users that the use of the Tor network does not render a user's communications totally anonymous. For example, within those FAQ, the Tor Project advised Tor

users that the first Tor relay to which a user connects may see the Tor user's actual IP address. The FAQ also included the question "So I'm totally anonymous if I use Tor?" The response provided explained that "Generally it is impossible to have perfect anonymity, even with Tor. Though there are some things you can practice to improve your anonymity while using Tor and offline."

█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████
                       ████████████████████████████
           █████████████████████████████████████████████████████
██████  █████████████████████████████████████████████████████████
       █████████████████████████████████████████████████████████
      ██████████████████████████████████████████████████████████
      ████████████████████████████████████████
          █████████████████████████████████████████████████
       █████████████████████████████████████████████████████████
       █████████████████████████████████████████████████████████
       █████████████████████████████████████████████████████████
       █████████████████████████████████████████████████████████
       ██████████████████████
           █████████████████████████████████████████████████████
       █████████████████████████████████████████████████████████
       ███████████████████████  █████████████████████████████

3

[Page content redacted]

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

    ██    ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████  ████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████

        ████████████████████████████████████████████████████████

████████

        ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████  ████████████████████████████████████

████████████  ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

███████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████



A check of law enforcement databases revealed that on or about April 2006, the FBI Headquarters, Child Exploitation Operational Unit, was investigating E-Gold, a digital currency online platform. Several child pornography websites that advertised memberships and downloads used E-Gold as the primary means by which individuals would purchase child pornography from

the websites. The investigation identified multiple E-Gold users, including an E-Gold user under account ID 2180887, username "Samsung", telephone number 202-265-XXXX, email address thomasp@outgun.com, address XXXX Adams Mill Road, Washington, D.C. 20009. Open source records checks revealed address XXXX Adams Mill Road, Washington, D.C. was a former address associated to the defendant. The law enforcement records indicated the account was registered on or about June 14, 2005, and last accessed on October 27, 2005.

As part of that investigation, the FBI Child Exploitation Operational Unit served a subpoena to Outblaze, Limited, for information associated to email address thomasp@xxxx.com. On April 6, 2006, Outblaze responded to the subpoena and listed the subscriber as Thomas LeGro, other email address: legrot@xxxx.com, gender: male, date of birth xx/xx/1976.[2]

Further review of the E-Gold investigation records revealed two additional accounts, account ID 1277870, username "Samsung", and 1791229, username "legrot". The two additional accounts were both associated to XXXX Adams Mill Road, Washington, D.C. and telephone number 202-265-XXXX. The two additional accounts were associated to email address legrot@xxxx.net.

Pursuant to data received from pen register/trap and trace, account information was obtained for internet activity associated with the defendant's Verizon internet account. The pen register/trap and trace was signed on May 8, 2025. Analysis of those records revealed that from May 15, 2025, through May 23, 2025, there were approximately six instances when internet activity was believed to be associated to previously identified TOR internet nodes.[3]

---

[2] The date of birth associated to this footnote was the same date of birth for the Thomas LeGro referenced throughout this document. The information was redacted for privacy purposes.

[3] █████████████████████████████████████████████████████████

**Execution of Residential Search Warrant**

On June 24, 2025, the Honorable Moxila A. Upadhyaya, United States Magistrate Judge of the United States District Court for the District of Columbia signed a warrant authorizing the search of the defendant's residence.

On June 26, 2025, FBI agents executed the search warrant at the defendant's residence. Several devices were seized during the execution of the search warrant, including an Apple MacBook, serial number QV04T2P45G, that was seized from an office area located in the basement of the defendant's residence.[4] The defendant identified this computer as his work laptop.

A forensic preview of the Apple MacBook laptop revealed a folder located under the file path "Users-legrot-Movies-TV-Media-Home Videos" that contained 11 videos depicting child pornography. All of the videos depict prepubescent female children performing oral sex on adult men. A summary of six of the videos is below:

| File Name | File Information | Description |
| --- | --- | --- |
| §Tgèy§Trytrg-1.m4v | Created on January 27, 2022 | A video that is 47 second long depicting a prepubescent female child performing oral sex on an adult male's penis. The prepubescent female is wearing a long sleeve shirt with her pubic area exposed. |
| Hjtgrzeaa-1.m4v | Created on February 7, 2022 | A video that is 5 minutes and 42 seconds long depicting a prepubescent female child performing oral sex on an adult male's penis. The prepubescent female is unclothed and her breasts are exposed. |
| Juyvrterczerze-1.m4v | Created on February 11, 2022 | A video that is 1 minute and 51 seconds long depicting a prepubescent female child performing oral sex on an adult male's penis. At |

---

[4] As of the filing of this memorandum, the extraction and review of the seized devices is ongoing.

| | | one point in the video, the adult male ejaculates into the prepubescent female's mouth. The prepubescent female is wearing a plaid dress. |
|---|---|---|
| Kunytre-1.m4v | Created on February 12, 2022 | A video that is 37 seconds long depicting a prepubescent female, whose genitals and anus are exposed to the camera, performing oral sex on an adult male's penis. At one point in the video, the adult male's hand manipulates the prepubescent female's vagina. |
| Ngqgszs-1.m4v | Created on February 13, 2022 | A video that is 44 seconds long depicting a prepubescent female performing oral sex on an adult male's penis. At the beginning of the video, the prepubescent female has the adult male's penis in her hand. When the adult male moves his penis toward the prepubescent female's mouth, she shakes her head. The adult male then presses her mouth against his penis by holding her head in his hand. |
| Ytjytj-1.m4v | Created January 8, 2023 | A video that is 2 minutes and 20 seconds long depicting a prepubescent female child performing oral sex on an adult male's penis. The prepubescent female is wearing a short-sleeve shirt and no pants. One point of the video shows the prepubescent female's genital area exposed to the camera. At another point in the video, the adult male ejaculates into the prepubescent female's mouth. |

When agents first approached the residence to execute the search warrant, they knocked on the front door of the residence, announced themselves as FBI agents with a search warrant, and ordered the occupants to open the door. Although a light was turned on in an upstairs bedroom, no one opened the door. After there was no response, agents knocked on the door and announced their presence three additional times, waiting in between each attempt.[5] Agents viewed the defendant's

---

[5] The "knock and announce" attempts are captured on the agents' bodyworn camera footage.

wife peek out at them through the blinds near the front door, and then disappear. However, the door remained closed. Agents then breached the door.

When agents entered the residence, the defendant's wife was standing in front of the stairs leading down to the basement. She appeared to be talking to someone below her. Agents then observed the defendant appear from the basement stairs.

During the execution of the search warrant, agents observed fractured pieces of the inside of a hard drive in the basement hallway. The hallway led from a basement office to the basement stairs. Agents also found the empty shell of a hard drive on a desk in the basement office. The shell appeared to have been pried apart. A manual staple remover, with a pry end, was also on the desk.

## **Applicable Legal Standard**

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Pursuant to 18 U.S.C. § 3142(f)(1)(A), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime of violence, which includes Possession of Child Pornography.

In determining whether any condition or combinations of conditions will assure the safety of the community, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). Because the defendant has been charged with a violation of 18 U.S.C. § 2252(a)(4)(B), there is no rebuttable presumption of detention in this case.

The "rules concerning the admissibility of evidence in criminal trials do not apply to the

presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

**Argument**

For the following reasons, the government submits that there is no condition or combination of release conditions that will reasonably assure the safety of any other person and the community. The defendant should therefore remain detained pending trial.

**A. Nature and Circumstances of the Charged Offense**

This factor weighs heavily in favor of detention because the defendant's criminal conduct involves the sexual exploitation of the most vulnerable members of our community – very young children. The defendant was a registered user of a darknet site dedicated to the trafficking of child sexual abuse material and he made numerous attempts to access that website. Moreover, at the time of the search warrant, the defendant possessed eleven videos depicting the sexual abuse of prepubescent girls.[6] The videos are extremely graphic, including multiple videos showing adult men ejaculating into the mouths of prepubescent girls and at least one video in which the adult's penis is physically forced into the child's mouth.

Th defendant's alleged conduct in this case is extremely harmful and dangerous to the

---

[6] As noted above, the extraction and review of the defendant's devices is ongoing.

13

community. "Child pornography depicts pictorial evidence of physical sex abuse against and exploitation of children and the production and distribution of such contraband carries a multitude of harms." *United States v. Galarza*, No. 18-MJ-146 (RMM), 2019 WL 2028710, at *6 (D.D.C. May 8, 2019) (Howell, C.J.) (reversing magistrate court's release order); *United States v. Nickelson*, No. 18-MJ-102 (GMH), 2018 WL 4964506, at *4 (D.D.C. Oct. 15, 2018) (Howell, C.J.); *United States v. Blanchard*, No. 18-MJ-101 (GMH), 2018 WL 4964505, at *4 (D.D.C. Oct. 15, 2018) (Howell, C.J.). Children captured in these materials are significantly harmed at the time that the images and videos are created, and they are re-victimized and re-traumatized every time an individual, like the defendant, accesses and views these images for his own sexual gratification. *See Galarza*, 2019 WL 2028710, at *6 (noting that "'the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims' [who] 'live with persistent concern over who has seen images of their sexual abuse' and how those images are being used to cause additional harm" (quoting U.S. SENT'G COMM'N, FEDERAL CHILD PORNOGRAPHY OFFENSES (Dec. 2012) at vii); *Nickelson*, 2018 WL 4964506, at *4 (same); *Blanchard*, 2018 WL 4964505, at *4 (same).

Furthermore, consumers of child pornography, like the defendant, create a market and demand for the production of these images and videos. These consumers contribute to the cycle of abuse and are in part responsible for the harm suffered by the children used to produce the images and videos in their collections. *See United States v. Goff*, 501 F.3d 250, 259–660 (3d Cir. 2007) ("Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography"). Thus, even if consumers of child pornography do not themselves molest children, their actions contribute to the ongoing abuse of children.

Accordingly, the nature and circumstances of the defendant's offense weigh heavily in

favor of detention.

### B. The Weight of the Evidence Against the Defendant

The evidence against the defendant is extremely strong: eleven videos of child sexual abuse material were found on the defendant's laptop and additional corroborating evidence shows that he was a registered user of, and repeatedly sought access to, a darknet child pornography site over a three-month period in 2024. The videos on his computer depict sex acts against prepubescent children and are unmistakably child pornography. The laptop was password-protected and the videos were saved under the defendant's user profile. The IP address that logged into the members-only darknet child pornography site was registered to the defendant's residence; ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Moreover, a second user profile, with an extremely similar user name and the same password as the profile associated with the defendant's IP address, attempted to access and log in to the darknet site an additional eight times through July and September 2024, at which time the darknet site ceased operating. Thus, this factor weighs in favor of detention.

### C. The History and Characteristics of the Defendant

The defendant has no known criminal history and a lengthy history of employment, as well as significant ties to the community. These factors weigh in his favor. However, he also appears to have a long-standing interest in child pornography. As described above, the defendant's IP address logged into the darknet site over a year prior to his arrest, and he repeatedly sought access to this site until it ceased operating. Thus, the offense conduct was not a spontaneous decision made in a moment of weakness or a lapse in judgment, but rather a repeated pattern of conduct that the defendant purposefully and secretively engaged in for at least a year ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Moreover, there is at least some indicia that the

defendant's child pornography activity may span decades: he had a registered account in 2005 with E-Gold, a now-defunct online currency that was the primary means with which users could purchase child pornography from child pornography websites until the service was seized by the FBI in 2005. Thus, to the extent this factor weighs in the defendant's favor, it does not do so strongly and does not outweigh the other factors in support of detention.

### D. The Nature and Seriousness of the Danger to any Person or the Community

The facts and evidence in this case establish that the defendant poses a grave danger to the community. As discussed above, the possession of child pornography causes ongoing trauma to the children depicted in the material. Moreover, the defendant, as a consumer of child pornography, fuels the market for new material depicting the sexual abuse of additional vulnerable children.

Home confinement, even with a third-party custodian, is not sufficient to protect the community. ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ Moreover, the defendant appears to be a sophisticated user of technology, familiar with accessing the darknet and hidden child pornography sites that are designed to evade law enforcement detection. His behavior indicates that he has the ability and knowledge to conceal his online activities from a layperson assigned to monitor his activities.

In addition, the circumstances surrounding the execution of the residential search warrant suggest that the defendant attempted to destroy evidence while law enforcement was knocking on his door. As noted above, agents did not enter the residence immediately, but rather performed a "knock and announce" four times. When agents ultimately breached the door after not receiving a

response, the defendant appeared to be coming up the stairs from the basement, where agents later found fractured pieces of the inside of a hard drive on the hallway floor. The hard drive shell, which had been pried apart, was discovered in a nearby basement office next to a manual staple remover that had a pry end. These facts give rise to an inference that the defendant attempted to destroy evidence and further indicate that he will not abide by any conditions set by the Court. Thus, this factor weighs strongly in favor of detention.

## **Conclusion**

The totality of the statutory factors demonstrate that that the defendant poses an unmitigable danger to the community. There is no condition or combination of conditions that can reasonably assure the safety of the community were he to be released. The government requests that he be detained pending trial.

                                Respectfully submitted,

                                JEANINE FERRIS PIRRO
                                United States Attorney

By:    */s/ Caroline Burrell*
       Caroline Burrell
       CA Bar No. 283687
       Assistant United States Attorney
       United States Attorney's Office
       601 D St., N.W.
       Washington, DC 20530
       Phone: (202) 815-8613